1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF WASHINGTON

9

10    JIM O. HAEDRICH,                  )
                                        ) No. CV-05-3042-MWL
11              Plaintiff,              )
                                        ) ORDER GRANTING PLAINTIFF'S
12    v.                                ) MOTION FOR SUMMARY JUDGMENT
                                        )
13    JO ANNE B. BARNHART,              )
      Commissioner of Social           )
14    Security,                         )
                                        )
15              Defendant.             )
                                        )
16    _____

17        BEFORE THE COURT are cross-motions for summary judgment,

18    noted for hearing without oral argument on February 6, 2006. (Ct.

19    Rec. 12, 16).  Plaintiff Jim Haedrich ("Plaintiff") filed a reply

20    brief on December 23, 2005.  (Ct. Rec. 23).  Attorney D. James

21    Tree represents Plaintiff; Special Assistant United States

22    Attorney Nancy A. Mishalanie represents the Commissioner of Social

23    Security ("Commissioner").  The parties have consented to proceed

24    before a magistrate judge.  (Ct. Rec. 7).  After reviewing the

25    administrative record and the briefs filed by the parties, the

26    Court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec.

27    12), **DENIES** Defendant's Motion for Summary Judgment (Ct. Rec. 16),

28    and **REMANDS** the case for further proceedings.

- 1 -

**JURISDICTION**

On July 23, 2002, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability since January 5, 2002, due to degenerative disc disease, back pain, and Bells palsy. (Administrative Record ("AR") 51-53, 59). The application was denied initially and on reconsideration.

On May 23, 2004, Plaintiff first appeared before Administrative Law Judge Verrell Dethloff ("ALJ"), at which time testimony was taken from Plaintiff and Plaintiff's wife, Karen Haedrich. (AR 214-232). On July 15, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 16-28). The Appeals Council denied a request for review on April 15, 2005. (AR 5-8). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 20, 2005. (Ct. Rec. 2, 4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and Plaintiff's and Defendant's briefs and will only be summarized here. Plaintiff was 54 years old on the date of the ALJ's decision. (AR 17). He completed high school, two years of college, and four years of a carpenter's apprenticeship at a night school. (AR 65, 217-218).

Plaintiff has past relevant work as a safety officer, estimator, and a carpenter. (AR 60). He testified that he stopped working because of back pain, not being able to walk long distances and an inability to sit at a desk for very long. (AR

218).  He stated that his last job was a full-time position but
that, in the last six to eight months of his work, back pain had
caused him to lose about 30 percent of the time.  (AR 227).  This
loss of time is reflected by his income in 2000 being $26,000 and
then going down to $12,000 in 2001.  (AR 228).

Plaintiff testified that he stands 5'8" tall and weighs 275
pounds.  (AR 218).  He stated that he was attempting to lose
weight and had lost 15 pounds in the last four months.  (AR 219).
When he stopped working, he indicated that he weighed about 230
pounds.  (AR 218).  He stated that his diabetes was inconvenient,
but that he had not experienced dizziness or a loss of energy as a
result of his diabetes.  (AR 219-220).

Plaintiff testified that he tries to keep the house up the
best that he can and tries to maintain the yard.  He stated that
he mows the lawn with a riding lawn mower, does the laundry,
vacuums, and loads the dishwasher half-way, rests for about a
half-hour, then finishes the job.  (AR 220).  He testified that he
gets out of the house about five times a week, going to the store
with his wife or to a friend's house.  (AR 221).

Plaintiff stated that, in his last job as an assistant
estimator and safety coordinator, he was required to climb stairs.
(AR 221).  He explained that he would go on a "walk-through" with
the contractors at a job site and the walk-though would consist of
going up and down flights of stairs.  (AR 221-222).  The position
of safety officer also required him to inspect scaffolding, which
called for climbing the scaffolding to make sure everything was
safe.  (AR 222).  He also stated that he would have to climb
ladders to inspect roofs.  (AR 222).

Plaintiff testified that he could no longer climb ladders or scaffolding and could only climb about half of a flight of stairs before needing to rest.  (AR 222).  He indicated that he could only stand up for about five to 10 minutes before needing to recline or sit due to pain in his back.  (AR 222-223).  He stated that he has problems walking and could only walk about 200 feet due to his back pain and congestive heart failure.  (AR 224).

Plaintiff described his back pain as a tightening up, like there is something pulling in his lower lumbar area.  (AR 223).  Plaintiff states that he does not like being in one position for a long time, and thus liked being in his recliner best because it allowed him to change positions.  (AR 223).  He indicated he spends more than half of his day in the recliner because the adjustability of the recliner helped relieve his pain or the pressure.  (AR 223-224).  He stated that he was in physical therapy for his back pain for a year-and-a-half, and the physical therapy helped him feel better but did not help his back pain. (AR 226).  He also sits in a hot tub about every night which helps and had used a TENS unit which helped at first but lost its effect over the years.  (AR 226).

Plaintiff testified that he has a disability parking permit as well as a disability permit for big game hunting that allows him to shoot from his vehicle or to have someone else shoot and retrieve the game.  (AR 224).  He stated that he did not think he could shoot his rifle and would likely have someone do the shooting for him in the future.  (AR 224).  He testified that he
///
///

went hunting with a friend the previous year for five days.  (AR
225).  He indicated that they stayed in a trailer and that he did
not hike, rather he hunted by using a pick-up.  (AR 225).

Plaintiff stated that, besides his back pain, he has problems
with his sciatic nerve which he described as a sharp pain through
the groin to the knee.  (AR 225).  He also indicted that he breaks
out in a sweat when he eats a meal and has problems with fatigue
(AR 225-226).

Plaintiff's wife, Karen Haedrich also testified at the
administrative hearing held on May 25, 2004.  (AR 228-231).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as
the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
Act also provides that a Plaintiff shall be determined to be under
a disability only if any impairments are of such severity that a
Plaintiff is not only unable to do previous work but cannot,
considering Plaintiff's age, education and work experiences,
engage in any other substantial gainful work which exists in the
national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
Thus, the definition of disability consists of both medical and
vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

///

///

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
is engaged in substantial gainful activities.  If so, benefits are
denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If
not, the decision maker proceeds to step two, which determines
whether Plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, Plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents Plaintiff from
performing work which was performed in the past.  If a Plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, Plaintiff's residual functional capacity ("RFC")
assessment is considered.  If Plaintiff cannot perform this work,
the fifth and final step in the process determines whether
///

Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.

*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

///

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 5, 2002.  (AR 17).  At step two, the ALJ found that Plaintiff has the severe impairments of mild degenerative disk disease, obesity and diabetes, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 21).  The ALJ specifically indicated that Plaintiff's complaints of Bells palsy, heart failure, shortness of breath and depression were not severe impairments since they have not resulted in significant limitations.  (AR 21).

The ALJ concluded that Plaintiff has the RFC to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for a total of six hours in an eight-hour workday, sit, with normal breaks, for a total of about six hours in an eight-hour workday, kneel, crouch and crawl frequently but stoop only occasionally and an unlimited ability to push, pull or manipulate.  (AR 22).

At step four of the sequential evaluation process, the ALJ found that Plaintiff could perform the exertional requirements of his past relevant work as a safety officer, a job which the ALJ determined did not require climbing.  (AR 26).  Alternatively, the ALJ determined that, based on Plaintiff's RFC, age, education, and work experience, the Medical-Vocational Guidelines ("Grids") Rule 202.13 directed that, at step five of the sequential evaluation process, Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 26-27).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that:

1.    The ALJ erred by rejecting the opinion of Plaintiff's treating physician, Paul E. Emmans, Jr., D.O.;

2.    The ALJ's opinion that Plaintiff is not credible is erroneous and not properly supported;

3.    The ALJ improperly rejected the lay witness testimony of Mrs. Haedrich; and

4.    The ALJ erred by failing to call a vocational expert and to conduct an adequate step five analysis.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.   Treating Physician**

Plaintiff contends that the ALJ improperly rejected the opinions of treating physician Paul E. Emmans, D.O.  (Ct. Rec. 13, pp. 13-16).  In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and the claimant's physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  The Commissioner responds ///

that the ALJ properly rejected the disability findings and
limitation opinions of Dr. Emmans by providing clear and
convincing reasons supported by substantial evidence. (Ct. Rec.
17, pp. 4-12). The undersigned agrees.

Dr. Emmans, Plaintiff's treating physician, completed a form
on December 26, 2001 and checked a box indicating that Plaintiff
was "totally and permanently disabled as a result of an injury or
disease which renders him/her incapable of performing any and
every duty pertinent to his/her occupation as a carpenter." (AR
210-211). Dr. Emmans indicated a diagnosis of degenerative disc
disease L2-3, L3-4 and L4-5 and noted a January 23, 2001 MRI[1] as
pertinent findings supporting the diagnosis. (AR 210). The ALJ
rejected Dr. Emmans opinion noting that it was vocationally based
and the objective evidence he referenced (the MRI results)
provided no support for the opinion. (AR 18).

An noted by the ALJ, there was no indication that Plaintiff
complained of back pain during any previous visit to Dr. Emmans
and there was no medical notes of an examination of Plaintiff's
back by Dr. Emmans prior to his finding of "permanent disability"
on December 26, 2001. (AR 18). Subsequent to the disability
finding by Dr. Emmans, the ALJ noted that Plaintiff presented to
the Selah Clinic on a monthly basis from December 2001 through
February 2002, once in June 2002, once in January 2003, and once

---

[1]A January 23, 2001 MRI revealed changes of degenerative disc disease
and bulging disc material at the L2-3, L3-4 and L4-5 levels. (AR 152).
Degenerative disc disease and mild degenerative facet arthrosis were
diagnosed, but no discrete disc herniation or evidence of significant spinal
stenosis were observed. (AR 152). The MRI of the lumbar spine demonstrated
no significant interval change when compared with an October 3, 1995 study.
(AR 152). In addition, no abnormality of the thoracic spine was identified
by the MRI. (AR 152).

in February 2003, yet the medical reports do not indicate that Plaintiff ever complained of back pain or that Dr. Emmans examined him for issues related to his back during these visits. (AR 19).

In March and May of 2003, Plaintiff reported back pain to Dr. Emmans. On May 27, 2003, Dr. Emmans noted that, despite Plaintiff's allegations of severe and incapacitating pain, lumbar spine x-rays "really did not look too pathologic with minimal changes." (AR 20, 193). Dr. Emmans reported his exam was "fairly benign." (AR 193). As noted by the ALJ, from June 2003 to February 2004, claimant presented to the Selah Clinic 16 times but the medical notes do not include any further work-up regarding Plaintiff's alleged disabling back condition. (AR 20).

On November 26, 2002, Salem Khamisani, M.D., examined Plaintiff on behalf of the Division of Disability Determination Services. (AR 120-123). Dr. Khamisani noted that Plaintiff was receiving no active treatment for his physical complaints but was taking ibuprofen on an as-needed basis. (AR 120). Examination of the lumbar spine revealed no midline tenderness, no paraspinal tenderness and no muscle spasm. (AR 122). Range of motion of the lumbar spine, flexion was performed to 80 percent, extension 20 percent, lateral bending 20 percent to either side and combined thoracolumbar rotation 30 percent to either side. (AR 123). With regard to Plaintiff's back complaints, Dr. Khamisani diagnosed low back pain, probably secondary to mild degenerative arthritis. (AR 123). He noted that there was no evidence of radiculopathy on clinical exam and the January 2001 MRI did not show any disk herniation or neural structure compromise. (AR 123). Dr. Khamisani opined that Plaintiff should avoid working in a dark

1    environment or at unprotected heights due to his diabetic
2    peripheral neuropathy and that his vision was significantly
3    limited and he needed his glasses readjusted by an optometrist,
4    but found that Plaintiff had no work-related restrictions for
5    upper extremities.  (AR 123).

6        An MRI ordered by Dr. Emmans and taken on May 30, 2003,
7    revealed mild to moderate multilevel degenerative changes of the
8    lumbar spine, but there was no definite change compared to the
9    2001 MRI.  (AR 204).  No acute disc herniation or significant
10   central canal stenosis was identified.  (AR 204).

11       As noted by the ALJ, despite MRI results which essentially
12   displayed no change since the 2001 MRI and despite Dr. Emmans'
13   last examination being "fairly benign," Dr. Emmans responded to a
14   questionnaire, created by Plaintiff's attorney, indicating that
15   Plaintiff's prognosis was poor and that Plaintiff was severely
16   limited or unable to lift at least 2 pounds or unable to stand
17   and/or walk.  (AR 20, 205-207).  The ALJ accorded this report no
18   weight because it was generated solely for litigation and because
19   it was unsupported by objective findings or the physician's own
20   records.  (AR 20).

21       The evidence of record displays that Dr. Emmans did not refer
22   to any physical examinations to support his opinion, other than
23   his examination on May 27, 2003, which was described as "fairly
24   benign."  (AR 193).  There was no evidence that Plaintiff
25   complained of back pain during any previous visit to Dr. Emmans
26   prior to Dr. Emmans' finding of "permanent disability" on December
27   26, 2001.  Moreover, the May 30, 2003 MRI ordered by Dr. Emmans
28   revealed no definite change when compared to his 2001 MRI.  (AR

20, 204).  The MRI exam reports indicated only mild to moderate degenerative changes of the lumbar spine.  (AR 152, 204).  Dr. Khamisani's November 2002 examination assessed Plaintiff with low back pain, probably secondary to mild degenerative arthritis.  (AR 123).  Dr. Khamisani opined that Plaintiff should only avoid working in a dark environment or at unprotected heights, but found that Plaintiff had no work-related restrictions for upper extremities.  (AR 123).  Dr. Emmans' conclusions that Plaintiff is permanently disabled (AR 211) and that Plaintiff was severely limited or unable to lift at least two pounds or unable to stand and/or walk (AR 205-207) is not supported by the objective evidence of record or by Dr. Emmans' own medical reports.  Furthermore, it was proper for the ALJ to reject Dr. Emmans' opinion as vocationally-based.[2]

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  In any event, the Court finds that the ALJ thoroughly analyzed the evidence of record (AR 18-25) and provided clear and

---

[2]Although a physician may make statements regarding what a Plaintiff can still do despite his impairments and his physical or mental restrictions, the final responsibility for deciding the issue of disability is reserved to for the Commissioner.  A statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine that a claimant is disabled as defined by the Social Security Act.  20 C.F.R. § 416.916(e)(1).  Opinions concerning the ultimate issue of disability are reserved for the Commissioner.

convincing reasons for rejecting Dr. Emmans' opinions that Plaintiff was severely limited and disabled.  The ALJ did not err by rejecting the opinions of Dr. Emmans in this case.

**B.  Credibility**

　　**1.  Plaintiff**

Plaintiff argues that the ALJ's opinion that Plaintiff is not credible is erroneous and not properly supported.  (Ct. Rec. 13, pp. 16-19).  The Commissioner responds that the ALJ appropriately gave clear and convincing reasons to discredit Plaintiff.  (Ct. Rec. 17, pp. 12-15).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  There is no affirmative evidence of malingering in this case; therefore, the ALJ was required to give "clear and convincing" reasons for rejecting Plaintiff's testimony.  *Lester*, 81 F.3d at 834.

The ALJ determined that Plaintiff's assertion of disability was not supported by the record and was therefore not fully credible in this case.  (AR 25-26).  In support of this finding,

the ALJ indicated as follows: (1) Plaintiff's subjective assessment of functionality is not supported by the objective medical evidence in the same way as Dr. Emmans' opinions were unsupported; (2) although Plaintiff reported significant limitations, he reported performing most of his household work and his hobbies included camping and hunting; (3) Plaintiff's minimized rendition of his hunting activity in November 2003 was not believable; and (4) although Plaintiff described his past employment as a safety officer as not requiring climbing, at the administrative hearing, he indicated he was required to climb stairs, scaffolding and rooftops during that employment. (AR 25-26).

While it is true that Dr. Khamisani's report indicated that Plaintiff performs most of his household work and that Plaintiff noted camping as a hobby (AR 121), the record reflects that Plaintiff's household chores were done sporadically and punctuated with rest (AR 220) and any details of Plaintiff's camping activities are completely non-existent in the record. A claimant's ability to engage in sporadic activities with periodic rest, such as housework and exercise, do not support a finding that he can engage in regular work activities. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In addition, with regard to camping, it is just as likely that Plaintiff did nothing more than lounge around a campsite than participate in strenuous exertional activities. (Ct. Rec. 23, pp. 9-10). A noted hobby of camping, without more, does not provide a basis for presuming activity inconsistent with disability or for discounting Plaintiff's credibility.

With regards to Plaintiff's noted hunting activity, the ALJ
stated that, last year, Plaintiff spent five days on a hunting
trip and stayed in a trailer while his friend shot his game.  (AR
25).   The ALJ indicated that, while a companion may shoot the game
of a disabled hunting permit holder, the Washington state
regulations nevertheless require the permit holder to be within a
quarter mile of the shooter.  (AR 25).  The ALJ simply stated that
he did not believe Plaintiff's testimony regarding his hunting
activity.  (AR 25).

However, as noted by Plaintiff, the ALJ's rendition of the
facts of Plaintiff's hunting trip was incorrect.  (Ct. Rec. 23,
pp. 10-11).  Plaintiff's testimony as to the hunting trip
indicated that he had a disability permit for hunting that allowed
him to shoot from his vehicle or to have someone else shoot and
retrieve the game.  (AR 224).  He stated that he did not think he
could shoot his rifle and, in the future, he would likely have
someone do the shooting for him.  (AR 224).  Plaintiff did not,
however, state that he had someone else do the shooting for him on
any prior hunting trip.  He indicated that he did not hike, but
rather he hunted by using a pick-up.  (AR 225).  The ALJ's
reference to the Washington state regulations on disability
hunting and the proximity of the permit holder is irrelevant, and
the ALJ's discussion of the hunting trip is in err.

With regard to the ALJ's notation as to the differences
between the August 3, 2002 Work History Report and Plaintiff's
testimony on May 25, 2004, the ALJ's rejection of Plaintiff's
testimony in favor of the fill-in-the-blank form is illogical.
Plaintiff testified that, in his last job as an assistant

estimator and safety coordinator, he was required to climb stairs.
(AR 221).  He explained that he would go on a "walk-through" with
the contractors at a job site and the walk-though would consist of
going up and down flights of stairs.  (AR 221-222).  The position
of safety officer also required him to inspect scaffolding, which
called for climbing the scaffolding to make sure everything was
safe.  (AR 222).  He also testified that he would have to climb
ladders to inspect roofs.  (AR 222).  The undersigned agrees with
Plaintiff that the notation of "0" hours on the August 3, 2002
Work History Report (AR 80) was most likely inadvertent or the
result of an interpretation by Plaintiff that he was required to
climb a handful of times per day, but not up to an hour or more
throughout a day.  (Ct. Rec. 23, pp. 14-15).  It is more
reasonable to assume that the job of construction site safety
officer would require a certain amount of climbing than to assume
there is no climbing involved with such a job.[3]  Accordingly, the
undersigned finds that the ALJ's rejection of Plaintiff's
testimony that his past relevant work as a safety officer required
climbing is also erroneous.

As previously noted, the ALJ is responsible for reviewing the
evidence and resolving conflicts or ambiguities in testimony.
*Magallanes*, 881 F.2d at 751.  This Court has a limited role in
determining whether the ALJ's decision is supported by substantial
evidence and may not substitute its own judgment for that of the
ALJ even if it might justifiably have reached a different result

---

[3]This assumption is supported not only by Plaintiff's testimony in
this case, but also by a job description provided by Plaintiff's former
employer in a letter submitted following the ALJ's determination.  (AR 13).
This letter is discussed further in Section C below.

upon de novo review.  42 U.S.C. § 405(g).  After reviewing the
record and based on the foregoing, the undersigned judicial
officer finds that the ALJ failed to provide "clear and
convincing" reasons for finding Plaintiff not credible.
Accordingly, Plaintiff's testimony was not rejected on permissible
grounds.

**2.  Lay Witness**

Plaintiff also contends that the ALJ erred by not making
proper credibility findings as to the testimony of lay witness
Karen Haedrich, Plaintiff's wife.  (AR 228-231).  (Ct. Rec. 13,
pp. 16-17).  The ALJ may not ignore or improperly reject the
probative testimony of a lay witness without giving reasons that
are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919
(9th Cir. 1993).  The ALJ shall "consider observations by non-
medical sources as to how an impairment affects a claimant's
ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.
1987), *citing* 20 C.F.R. § 404.1513(e)(2).

The ALJ made note of Mrs. Haedrich's testimony indicating
that she stated Plaintiff was in constant pain as evidenced by his
face and body language and that he could not climb but helped
around the house in 10 to 15 minute increments.  (AR 21).  The ALJ
indicated that her testimony was not fully credible because she
did not give concrete examples of what Plaintiff could not climb
and her observations were contrary to the medical records and
contrary to Plaintiff's camping hobby and hunting activity.  (AR
21, 25).  The Commissioner responds by restating the ALJ's
rationale for discredited Mrs. Haedrich's testimony.  (Ct. Rec.
17, p. 14).

1    The ALJ did not identify specific conflicts between Mrs.

2  Haedrich's testimony and the medical evidence.  The ALJ also had

3  the ability to question Mrs. Haedrich at the administrative

4  hearing regarding examples of Plaintiff's inability to climb but

5  chose not to at that time.  Additionally, as noted above, the

6  ALJ's discussion concerning Plaintiff's camping hobby and hunting

7  activity is flawed.  Although the ALJ provided reasons for

8  rejecting Mrs. Haedrich's testimony (no examples given of

9  inability to climb and conflicts with medical and other evidence),

10  the ALJ did not provide specific, germane reasons for rejecting

11  the testimony of the lay witness.  Accordingly, the ALJ also erred

12  with regard to his rejection of Mrs. Haedrich's testimony.

13  **C.  Former Employer Job Description**

14    With regard to Plaintiff's past relevant work, the ALJ

15  concluded, at step four of the sequential evaluation process, that

16  Plaintiff could perform the exertional requirements of his past

17  relevant work as a safety officer, a job which the ALJ determined

18  did not require climbing.  (AR 26).  Following the ALJ's

19  determination, Plaintiff contacted his former employer and

20  obtained a description of the nature of his former work as a

21  safety officer.  (AR 13).  The letter from Plaintiff's former

22  employer was submitted two months after the ALJ's denial of

23  benefits.  (AR 13).

24    42 U.S.C. § 405(g) provides for remand where new evidence is

25  material and there is good cause for the claimant's failure to

26  incorporate the evidence in a prior proceeding.  *Burton v.*

27  *Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).  To meet the

28  ///

materiality requirement, the new evidence must bear directly and
substantially on the matter.  *Burton*, 724 F.2d at 1417.  If new
information surfaces after the Commissioner's final decision, and
the claimant could not have obtained that evidence at the time of
the administrative proceeding, the good cause requirement is
satisfied.  *Booz v. Secretary of Health and Human Services*, 734
F.2d 1378, 1380 (9th Cir. 1984).

Here, after the ALJ denied Plaintiff's claim, Plaintiff
appealed to the Appeals Council, submitting new evidence along
with his appeal.  The new evidence at issue is a letter dated
September 17, 2004, from Jim Oliphant, Project Manager at Red
Earth Construction, Plaintiff's former place of employment.  (AR
13).  Plaintiff indicates that he did not solicit this information
earlier, because he was surprised by the ALJ's finding that the
job of safety officer did not require climbing.  (Ct. Rec. 23, p.
17, n. 4).  Plaintiff specifically testified at the administrative
hearing that his former work as a safety officer required climbing
activities.  (AR 221-222).  Under these circumstances, the
undersigned concludes that the "good cause" requirement is
satisfied for submitting the letter following the final decision
of the Commissioner.

Only if the Plaintiff's new evidence is material should the
Court consider the ALJ's decision in light of the new evidence.
New evidence is material if there is a reasonable possibility that
it would have changed the outcome of the ALJ's determination.
*Booz*, 734 F.2d at 1380.  To meet the materiality standard, the new
evidence must bear directly and substantially on the matter in
dispute.  *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982).

Mr. Oliphant's letter describes Plaintiff's past work as a safety officer as one which required climbing ladders, stairs and scaffolds in order to perform inspections. (AR 13). The ALJ found that Plaintiff's past relevant work as a safety officer did not require climbing. (AR 26). The ALJ subsequently concluded that Plaintiff was not disabled because he could perform his past relevant work as a safety officer. (AR 26-28). Based on the foregoing, the undersigned concludes that the new evidence, Mr. Oliphant's letter, may have changed the outcome of the ALJ's ultimate decision. Accordingly, the undersigned finds that Mr. Oliphant's letter is sufficiently material to compel a remand to the ALJ.

**CONCLUSION**

Plaintiff argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits. (Ct. Rec. 13). The Court has the discretion to remand the case for additional evidence and finding or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, further development is necessary to remedy defects and for a proper determination to be made.

On remand, the ALJ shall reassess Plaintiff's RFC, taking into consideration the testimony of Plaintiff and Mrs. Haedrich, as well as any additional or supplemental medical evidence relevant to Plaintiff's claim for disability benefits. The ALJ

shall elicit the testimony of a medical expert at a new
administrative hearing to assist the ALJ in formulating a new RFC
determination.  Plaintiff's new RFC assessment should be presented
to a vocational expert, at the new hearing, in order to determine
if he is capable of performing his past relevant work as a safety
officer or any other work existing in sufficient numbers in the
national economy.  In determining whether Plaintiff can perform
his past relevant work as a safety officer, the ALJ shall give
appropriate consideration to the job description provided in Mr.
Oliphant's September 17, 2004 letter.  (AR 13).  Accordingly,

     **IT IS ORDERED**:

     1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is
**GRANTED** and the above captioned matter is **REMANDED** for additional
proceedings as outlined above and pursuant to sentence four of 42
U.S.C. § 405(g).

     2.  Defendant's Motion for Summary Judgment (**Ct. Rec. 16**) is
**DENIED.**

     3.  Judgment shall be entered for **PLAINTIFF**.  An application
for attorney fees may be filed by separate motion.

     4.  The District Court Executive is directed to enter this
Order, provide a copy to counsel for Plaintiff and Defendant, and
**CLOSE** the file.

     **DATED** this ___12th___ day of April, 2006.


                s/Michael W. Leavitt
                MICHAEL W. LEAVITT
          UNITED STATES MAGISTRATE JUDGE